Good morning, Your Honors. Hal Rosner for Appellant. I'd like to reserve five minutes. Okay. Please watch your clock. Thank you. I'd like to begin with the economic loss rule. The fact that what we have here is the California Supreme Court has decided not to decide the issue that's before the Court today. And that's apparent at pages 991 and 992 of the opinion, where the Court says that we decline to decide the issue of whether the intentional concealment constitutes an independent tort. Interestingly enough, though, right after making that declaration... Are you talking about, which case are you talking about, Robinson Helicopter? I'm sorry, Your Honor. So it expressly said we're not going to decide this issue because they felt that the affirmative misrepresentations were so clear, they went with the narrowest opinion possible. But I think they gave a pretty good hint where they were going. Because right after that, they cited a series of cases that strongly held that fraud claims should be allowed to proceed as an exception to the economic loss rule. They began by citing the Lazar case and said because of the extra measure of blameworthiness inherent in fraud, and because in fraud cases we are not concerned about the need for predictability about the cost of contractual fraud, clients may recover out-of-pocket damages in addition to the benefit of the bargain. They then went on to cite the Diamond Multimedia case, stating, In addition, California has a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices. Interestingly enough, they also cited a case from outside of California. And it's a case I particularly like, which says, As one court stated, simply put, a contract is not a license allowing one party to cheat or defraud the other. And finally, they also cited the early case that Dana's fraudulent conduct cannot be considered a socially useful business practice. So I think that gives us a hint that if they had reached the issue, they would have included intentional concealment as part of the exception to the economic loss rule. It's really a, when you look at various fraud claims, it's a distinction without meaning. They're just different types of fraud. And the key point appears to be that it be intentional. What they're very clear about is they don't want negligence claims as an exception to the economic loss rule. And in our briefing, you know, we took the position that we haven't seen a case that says that an intentional fraudulent act, whether it be concealment or whether it be affirmative misrepresentations, would not serve as an exception. We supplied in 28J a series of court opinions that, in general, ruled our way, had some ruled against us. There seems, there is confusion in district court what to do with this issue, and I think guidance is obviously needed here. We have the other issues in this case, one of which is due process. I think it's probably outside the norm that a reply brief was treated as a motion for summary judgment. We kind of went over that. The court had us apply a brief on a Saturday before noon at one court day's notice, and then had them supply a brief by the end of the day of the hearing, which was at 3 o'clock. Then there's the hearing, and then we find out they've granted summary judgment. It was a motion, a limine that wasn't any notice that it was going to be treated as a summary judgment. We took strong exception to the positions the defendant took in that case, and disagreed with the positions which is addressed in our brief. We felt were incorrect. Another issue we have is the statute of limitations issue. It's kind of challenging to get one's head around BMW's argument. BMW has taken the position there was no defect in this car during the warranty period. They then argue the plaintiff should have known there was a defect in the car during that same warranty period. The court, to cut us off because it's a four-year statute of limitations, had to find that the claim that four years had run by August of 2013. The car was bought in 2009. It's never really clear what act the court feels triggered it, or when the court feels the statute of limitations was triggered. As we pointed out at length, we believe this is a factual issue to be determined, and you can't sit there and tell a customer repeatedly that a condition is normal, this is how all the cars do it, constantly, and take repairs, and at the same time say, oh, you should have known it was defective in your line. That's not really a workable theory. How many repairs did he do? This is under a three-year period. There were, was it more than 13, 14 repairs conducted, right? Right. So the representation that everything was normal, that may create a travel issue as to whether he actually knew that there was a defect, but what about does it put him on inquiry notice, because it's new or reasonably should have known. Right. Well, at the time he cut off the claim, there had only been three repairs. The law requires a failure to repair if a manufacturer is unable to repair within a reasonable number of attempts. Reasonable goes through quite a bit of different views. One hint is given by the statutory presumption that four or more times creates a presumption that that's a reasonable number. Some cases it can be 20 or 30 times if it's a cigarette lighter, for instance, and I actually had the published case, Bishop v. Hyundai, where the car blew up, and I argued that wasn't a reasonable number. I appealed and said, no, if it's blown to smithereens, that's probably a reasonable number. It's zero. So it really can vary a little bit here, and he did make a lot of inquiries to it. One of the issues we have is the manufacturer was not telling its dealers of the defect or acknowledging the defect until December of 2014 when it offered customer care packages and basically put out a notice to all buyers of these cars offering to try and fix things, let them exchange them into other vehicles. We believe that probably was a more logical triggering event on it. And you know what? He may have been on inquiry notice. That's a good factual issue for the jury. I think it's an issue I expect the defense, if we'd gone to trial, would have argued vigorously and we would have defended, and it would have been a fact issue for the jury to determine it on a reply brief on a motion and eliminate without hearing any evidence, I believe was improper for this as it should have been a fact issue. But yes, he did have a lot of repairs. They were very adamant that this is a normal. You bought this car. You bought a 750LI, and that's how this car operates. And I think given that, we have a lot of tolling issues that go along with that and certainly issues of fact that we felt should have gone forward to the jury on such issues. Defendants raised in their appellate briefs for the first time the issue of a statute of limitations defense on the fraud claim. That was not raised at all in the district court. The sole basis of their motion for judgment on the pleadings was an economic loss rule argument. Having not raised it at all in the lower court, the argument is waived for purposes of appeal. So interesting, we made a number of tolling arguments as alternative arguments in our brief, and a defendant's brief failed to address the tolling arguments in the reply brief that they did. You know, although I have 10 minutes left, unless the Court has any more questions for me, I'd like to reserve the rest of the time for reply. Why don't you reserve your time? Thank you, counsel. May it please the Court. Thomas Peterson for BMW of North America. I'd like to start with the statute of limitations, because the statute of limitations, I think, is the way in which the Court can resolve the case. And you don't actually have to get into the economic loss rule, though, of course, I do propose to respond and answer any of the Court's questions about it. My colleague says that the statute of limitations wouldn't apply to the fraud cause of action. And it's true. It wasn't argued in the district court, because by that point the fraud claim had been dismissed. But it's an alternative ground by which you can uphold the judgment in this case, because the record establishes as a matter of law that the claims are time-bound under the four-year statute of limitations, which is applicable to the sole. But isn't the discovery rule here really a question of fact for the jury? No, Your Honor, I don't think it is. And the reason I don't think it is, is I think there's a couple of things you want to look at. One is you want to look at the issue. You want to look at, as Judge Mayer was inquiring in her questions, you want to look at the number of repairs that occurred during the outside, more than four years before this claim was brought. This claim was brought eight years after the car. I recognize that, but didn't each time the car was repaired, wasn't he told independently that this is how this car was, that there was nothing wrong with the car? Weren't there a series of independent representations by the BMW employees? Well, it was by the dealership, but he also testified about that. And this, I think, is probably the most important evidence in the case, and you're going to find it in the record at pages 517 and 518. And this is part of the deposition of the plaintiff that the plaintiff put into the record as part of their accompanying their 29 brief opposing the statute of limitations after the district judge raised it. And it starts with a question, which is on page 517, Mr. Lee, when did you first consider filing your lawsuit against BMW? And on page 518, the answer starts at line 14, and if you don't mind, I'd just read a bit of it. From the time that I got this car, even with the warranty that was purchased from a type of insurance company, there were a lot of issues. And after the warranty expired, and let me just pause there, it's undisputed that the warranty in this case expired, the stem to stern bumper to bumper warranty expired in April of 2011 because while it was a four-year warranty, it also had a 50,000-mile cap on it, and nobody disputes that's when it expired. And also there was a 70,000-mile warranty with respect to the smog system, and that expired in October of that year. But nevertheless, he says, so at the time of the warranty, he says, I started doubting myself about this car. Now, that's certainly the reasonable suspicion which triggers inquiry notice in California, but then Judge Wardlaw, to get specifically to your point about what he was told. And also it started causing me a lot more money, and every time I complained pretty heavily, service advisor was pretty consistent by telling me that that's how it is and it is pretty normal for that car. I guess he tried to assure me or convince me, but I thought that something was not right. In other words, he himself testified that the assurances that he said he was receiving from the dealership did not convince him that the car, that this was just some sort of normal aspect of operating the car. And you can link the temporality of this, the time that he's talking about, by reference to his testimony that it's in relation to the expiration of the warranty, and it's admitted, I believe, at footnote two of the opening brief, that the warranties expired on the dates that I specified. And remember, the lawsuit was filed in August of 2017. We go back four years for purposes of Song-Beverly, and that gets us to 2013, and that's more than a year and a half after that bumper-to-bumper warranty would have expired in this case. And with respect to the fraud cause of action, it's the same basic inquiry under California law. It's an inquiry notice inquiry when we have a situation like this where we're not dealing with some sort of a fiduciary relationship, and there's no credible argument that this is a purchase and sale transaction. So the inquiry is the same, and so it's the fraud statute of limitations period is a lesser included period which falls under the umbrella of the analysis which governs with respect to the Song-Beverly Act. And so I really think that I do agree very much with Mr. But even after that point, didn't he continue bringing the car back to be serviced to the BMW dealership? Well, he continued to bring the car to be serviced, that's true, but he testified that he'd reached the point where he has doubts notwithstanding what he was told by the dealership. I don't think that he can simply defer the statute of limitations or cause the trigger of it to somehow stop just by sort of re-presenting the car over and over again. The fact of the matter is he bought the car, notwithstanding he testified that he recognized there were problems with it. He bought the car more than four years before he filed lawsuit. And moreover, Your Honor, he complained within this period, that is a period more than four years before he brought the lawsuit. He brought the car in according to the records that were put in before the district court. He complained at least six times, or at least six times, you'll see in those records issues about the oil consumption of the car. And so what does he testify is the thing that prompted him to file a lawsuit? It's when he got a letter from his lawyer, his lawyer's law firm, telling him that these BMWs with this certain engine had a tendency to leak oil. Okay, so that's what he said motivated him to sue in 2017, but he had all that knowledge long before, more than enough to trigger the suspicion element of California law, which puts him on inquiry notice and charges him with the obligation to, charges him with knowledge of everything that he could have discovered if he had proceeded. And my colleague says, well, there's some irony in the fact that a BMW disputes liability. There's nothing at all that suggests that a defendant, in order to mount a statute of limitations defense, has to concede or prove that the plaintiff is bringing a valid claim. Rather, the critical inquiry, and we've cited in the brief a California pattern of jury instruction that says that the critical inquiry is sort of knowledge of injury and a suspicion that something is a riot, that there's been some sort of potential injury, some sort of potential harm that's been inflicted. And so I think, once again, if you look at the statute of limitations issue, it's established as a matter of law. Now, my friend says that we somehow didn't aggress the tolling arguments. I beg to differ. Our brief goes through each one of them. But, again, most of them also resolve themselves by going back to the testimony that the plaintiff himself gave, which I, the primary important, the most important part of which I think I just read for you. I think the, so the problem I'm having with this, notwithstanding his, his expressed doubt that, you know, he doesn't know much about cars and, you know, I'm dependent on what the service people tell me. The discovery rule begins when the plaintiff knows or should know that the defendant will not or cannot repair a defect, repair the defect. Yet, every time he took his car in, the service people said they had prepared it, that this was a normal, they had repaired the problem. Well, I'm not sure. I don't think the record really suggests that that's exactly what they said. I think what they told him, what they tried to assure him was that the fact that he's bringing the car in over and over to have this done is something that is normal for the vehicle. He knows, even if somebody told him, well, you know, we don't, there's no more oil problem. Well, he knows within this one period that he had five more visits where he had an oil problem and he also testified that this problem cropped up from the very beginning of his ownership of the car. So you can't very well rely, if someone had told him that, well, the oil problem will not recur, he knows, he discovered that's not right. But more importantly, again, he was told this is a common characteristic of the car. And from what I read to you, he testified that he doubted that. He doubted what he was told. And that's enough under California law. And, you know, my colleague has suggested that, well, perhaps it was inappropriate for the court to examine this issue in this sort of accelerated context of the proceedings in May of 2018. But this is the testimony of the plaintiff. I don't know how the, you know, it's well settled that a plaintiff can't, after giving testimony, can't come in and try to repudiate it by some sort of declaration. The relevant question, we don't even have to establish his subjective state of mind. We only have to establish that an objectively reasonable person would have had suspicions aroused. And I think we not only have that, but we have his subjective statement. So then going back to the process that led to this particular decision. When did BMW actually become, when did BMW become aware that there was a defect in this car? Well, I'm not, I don't think we concede there is a defect in the car, Your Honor. I mean, he bought the car and he drove it for hundreds of thousands of miles. And he says that there is some deficiency in connection with the engine. But, you know, we dispute that. And again, I don't think, we're not required as part of mounting a statute of limitations defense to acknowledge that the plaintiff has a valid case. I mean, people bring cases all the time. And they, here we have a situation where the plaintiff thinks that he's being subjected to certain issues with respect to the performance of the car, which are not as they're supposed to be. And he didn't believe people when they were telling him that they were as they were supposed to be. If he thinks that that presents an actionable claim under the Song-Beverly Act or as a matter of fraud, he has to file the lawsuit even though BMW is then entirely within its rights to come in and say, well, you know, there's no validity to these claims. There's no merit to them. There's no... So, what was the basis for BMW offering the complementary custom care package? The custom care package was offered in 2014 because of some concerns people had about the engine and there was some effort on their part to accommodate their customers. It did not, but importantly, it didn't extend the warranty in any sense. It specifically disclaimed the fact it was doing that. So, yes, they offered some additional work on the cars. And there, but again, I don't think that constitutes any kind of concession on BMW's part that the plaintiff has, in this case, any sort of valid claim with respect to the performance of his automobile. And I don't think we're required to carry that burden for purposes of the limitations. So, unless you want me to address more here, what I was going to do quickly was talk about this procedure that got us to the judgment on the statute of limitations. The plaintiff has suggested there's some great unfairness in the fact that this was done on an accelerated basis. But, you know, put yourself in the shoes of the district judge. He's got a trial, which is supposed to start on May the 15th. He looks at this issue and says, based upon the fact that the warranty expired in April of 2011 and the fact there's a four-year statute of limitations, he's at a hearing and he says, look, to me, this case is time-barred because it wasn't filed by April of 2015. That's what he says in the transcript. Let's get some briefing on that. I don't want to drag a bunch of people in here to sit as jurors if this case can't go forward. You're asking Judge Wynn and I to put ourselves in the place of a district court judge? Your Honor, I came very close to saying this is a situation that you know very well. Yes, we know. We've both been there. I do. And I had that very much in mind and a bit of tongue-in-cheek, perhaps, on my part. Okay. But so there's nothing unreasonable about this. And the key point I want to get across to you is there was no objection to this procedure. There was no request for more time. It's not even now. We have no idea what more would have been adduced. They, by way of evidence, the fact that it ended up being treated as a summary judgment procedure, it's the plaintiff who brought in this evidence. They're the ones who filed a 29-page brief. They filed the plaintiff's deposition. They filed these repair orders. They made it an evidentiary question. And importantly, this is not something that just came out of the blue in this case. If this case had gone to trial on May the 15th, the statute of limitations was all over it as an issue that was going to be tried. So you were dealing with lawyers who were a few days away from starting the trial of a case which would have addressed limitations, and they gave no indication to the district judge that they were other than fully prepared in order to address this issue. So let me turn then to the economic loss rule. And I think the important, again, I don't think you have to get there because of the statute of limitations issue, but I think the important point, overarching point I'd like you to focus on here is that my colleague takes the position, and he reads a statement or two from some California cases, and he says the economic loss rule is just categorically inapplicable to intentional fraud of all of its types, and we don't differentiate concealment, which is one of the things that the district judge did here. Now, I don't ‑‑ there are a couple of statements in some California cases which, if you read them, would suggest that, you know, intentional fraud is sort of a categorical issue. But I think you have to focus on how the California Supreme Court has actually addressed this issue because if the rule were, as my friend says, you cannot explain the outcome of the Hunter case, which is the case where the California Supreme Court reversed a $120,000 fraud judgment in connection with a breach of contract case in an employment setting because, again, the court recognized the existence of fraud in connection with that transaction and said that it was an inappropriate blurring together of tort and contract. So the rule can't be, as he says, because why did the California Supreme Court so rule? And in the Robinson case, the Robinson case is an infinitely easier decision to write if the rule is that categorically all types of intentional fraud are exempt from the economic loss rule. If that were the case, then why did the Supreme Court go out of its way to put to one side concealment, and why did it go out of its way then to say that you have to analyze whether or not the intentional fraud, that is the affirmative active fraud, is independent of the circumstances giving rise to the breach of contract? And so I think it's important that there is, I know of no California precedent, California case that has ever dealt with concealment in this context and applied the economic loss rule in this context or analyzed it. It's true, as my friend says, that there are a couple of Federal cases, and the Federal cases go in different directions. I noticed in getting ready for this argument that Judge Fletcher wrote an opinion for the court involving Nevada law in which he talks about the fact that, you know, the jurisdictions are sort of all over the place on this question. So the economic loss rule, then, you can't say it's a sweeping rule. And then if you ask yourself, can you differentiate concealment? Of course you can. I mean, look at, in this case, the suggestion is made that this is a fraud in the inducement case. And if you look at paragraph 43 of the complaint, the last sentence says, in effect, and the basis for part of their fraud theory, I wouldn't have bought the car if I knew it had these problems. Well, that's buyer's remorse of the classic type. It's a lot different from somebody, from me telling you that I have a gold mine under my house and affirmatively inducing you to buy. And because it's buyer's remorse of the classic type, you get into all the problems that are, all the concerns, rather, that motivate the courts when it comes to applying the economic loss rule, which is the importance of creating separation between tort and contract. And I would leave you, finally, with this. If you look at and compare a fraud cause of action with the warranty causes of action as they are embellished in California by the Song-Beverly Act, they are, they are, there's overlap. Indeed, you can make a very strong case that the remedies that are available to the plaintiff under Song-Beverly are far superior to the fraud remedies. Under the fraud cause of action under California Civil Code Section 3343 for a product, you compare the value asserted, represented, and the value received. If you look at the Song-Beverly claim, the plaintiff has, if they reject the goods, they have an opportunity of replacement, which is probably more valuable than that fraud measure. If they keep the goods, they have an opportunity for repair, which probably is similar to that measure. Now, punitive damages under fraud, that's true. But in California, under a very high clear and convincing burden, have to prove oppression, fraud, and malice subject to intense judicial scrutiny and constitutional review. Under the Song-Beverly Act, willful, if you prove willfulness, not subject to those same standards, you can get up to double damages, and also you get attorney's fees, which aren't available for common law fraud. So, again, the remedies, we're talking about grievance about the same thing, nothing independent with respect to the fraud claim, and the plaintiff has a full measure of remedy and no need for fraud. And hence, the policy of California to separate tort and contract should be respected.  Thank you. Good, I reserved some time. Yeah, good thing. Mr. Rosner, why shouldn't your client's admission that he had doubts about the ability of the BMW dealership to repair his car shortly around the time the warranty expired be the end of this? Well, number one, he did have, you know, at some point you're going to begin to doubt something. But you have a layperson in a situation here where the manufacturer is not even telling his own dealers the truth, and they want him to go ahead and ascertain that we're lying and that we're not telling you the truth. But it's new or should have known. The standard is new or should have known. Right, but it's that subject to various tolling doctrines, which include the continued efforts to repair the vehicle, the continued representations. They did not address equitable tolling. The brief speaks for itself, but it completely failed to address that argument at all. Furthermore, the standard is even different when they now want to bring up the fraud claim. We've cited the law that says they can't raise it now. But under the fraud claim, it's discovery. You're told until discovery of the fraud. And so it's sort of like they just want to sneak it in under because it's almost not even addressed in their appellate brief. It's just kind of thrown in in a short section. They don't even address the standard for fraud. The fraud is discovery of the fraud. But, sure, he had at one point any reasonable person. We did put in a lot of his deposition testimony where he went back and clarified things and where he was in his thought process on it. Is there something in the deposition that undermined the fact relied on by the district court in its analysis of the statute of limitations issue with regard to the Song-Beverly Act claim? There is. If you have a citation, I can look it up. I guess I struggle to see the error in the district court's analysis with regard to the claim because the district court was very specific in citing to the deposition record that he was, that your client was suspicious shortly after leasing the vehicle. And this is the part that counsel relied on. The district court relied on that as well and said there were a lot of issues. I started doubting myself about the car. From the time I got it, even with the warranty that was purchased from a type of insurance company, there were a lot of issues. That doesn't become relevant and you can't be put on notice until your cause of action accrues. It can only accrue when you meet the elements of a Song-Beverly claim, which is a reasonable number of repair attempts and an inability to repair. These are the elements. The court picked a time period where he didn't even have a statutory presumption. He had only had three oil change repairs at the time. Right. Well, I don't think the district court said that from that moment on the statute began to run, but what the district court said is that the testimony demonstrates that he had some suspicion regarding wrongdoing and, therefore, the exercise of diligence was really required under California law. Well, it can't begin to run until you have a claim. You can have lots of suspicions. You might have suspicion on your first time, but you don't have a claim yet. You can't have something start to run before a claim accrues. It's 40 years from the accrual of the claim. To have a claim, you have to have had a reasonable number of repair attempts and an inability to fix. When you look at the equitable process here, through December 2014, they're maintaining complete innocence, and this is a normal feature of the vehicle. Oh, he should have known we were lying. He should have known we weren't giving him the right facts. And to put that burden that the client's supposed to know when the manufacturer, in this case fraudulently, claims it doesn't know, which it did. It did know, and we've gotten into their engineers and their mechanics and what was being said, that they absolutely knew of the problems with this engine at the outset. So when they're completely misleading a person, that causes the equitable estoppel, and we're not talking now just on the Song-Beverly, let alone the discovery of the fraud, for purposes of the fraud cause of action. So when he had one repair, when he had two repairs, and that's on the individual item, it has to have a substantial defect to an item, in this case, let's go with the oil. I thought that the record shows within the statute of limitation period, there were many, many repairs that were specifically related to low oil issues. A number of times. As far as what repairs were conducted is somewhat questionable, given their position that it's normal, and they knew BMW at least knew that they couldn't fix it anyways. The last line of defense is the client claim, we can't fix it, or it's normal. I've run into that for the last 35 years. It's normal defense on that, and the question is, should he have been able to find out it wasn't normal in the face of basically blanket denial? The public part of the dispute, the position that they were taking on this, and yes, there are issues of fact that would have to be considered by the jury. The point to be raised, we were not told that this was going to be a, quote, summary judgment, because obviously we would not have won a process where we get their brief three hours before the court decides and no chance to respond. I think that they have a general due process here. And part of what we get with the manufacturers, part of it was displayed here by counsel, is everything becomes a buyer's position on everything. My car doesn't work or it blows up or it has this problem or that. It's always buyer's remorse. You know, a normal person is, but we, and I'm sorry that I can't just page out for you. In our brief, we put a lot of the deposition testimony that we thought did contradict it, what was said in that, why it's a question of fact. We did that both in the opening and then in the direct response. And in the reply brief, we went through the deposition testimony where he kind of goes, well, they were telling me this, and so I was thinking, well, maybe that was the truth. And they're continuing to, you know, hey, say we're not going to even fix it. Say we're not going to fix this thing. So it gives some disclosure of the defect that they're withholding to go ahead and say the time is running on him from something we're hiding. We're going to create a situation where basically we're rewarding the hiding of information from the consumers. The average consumer, especially in this case, Mustang in particular, is not going to be able to figure out what are fairly complex problems that this particular N63 engine had in this case. I'd like to address very briefly the economic loss rule issue that we went back to. And we are – look, the Supreme Court, I understand, wanted to tread very carefully here and they brought the helicopter case. Well, counsel, may I ask a question on that? The California Supreme Court was very specific. They were not going to add the fraudulent concealment exception to the economic loss rule. So why should we now presume to say you didn't mean what you said and we're going to create an exception for you? I think they were very specific that they were leaving that issue for another day. So why should we reach the issue sitting in diversity and say, here's California, what the rule is for you, period? Well, one reason is simply that this is something district courts are being confronted with on a daily basis and we're seeing very ad hoc and I think we both agree, contradictory opinions coming out. Some clarification is needed. And I think the fact that they then went in to cite a whole series of cases about the importance of having a fraud exception gives us at least some clue. I mean, obviously, we probably wouldn't be here today if the Supreme Court had given us clarity on the issue. But I think they went out of their way to say, don't read it this way. We're not addressing this issue. So by saying we won't address this issue or we don't need to address this issue, jurisprudence we've certainly seen from the U.S. Supreme Court, too, in deciding cases on the narrowest possible ground, I don't think forces us to conclude one way or the other. We do have an issue that needs to be addressed. By the California Supreme Court. To not address it just means more ad hoc decisions out there. And so they put you in a rather difficult situation here of having to guess what they would do on an issue. I think there's clues within the opinion itself, but I believe reasonable minds could probably differ on that. It's how they decided to handle it. I think it would have been nice, but they didn't want to reach out to an issue that they did not believe was before them. Because they thought that, let's face it, the Robinson helicopter case is pretty outrageous. You're not putting lawful clutches for helicopters. And you're misrepresenting and giving false certificates. And you're saying they're of a certain hardness and functionality when they're not. I mean, it was so egregious. I'm actually wondering how the appellate court had originally said, oh, that's all okay. And it obviously wasn't okay to do what they did. And the Supreme Court was clear, it's not okay to do what these people did. But they were not willing to reach out to an issue they did not perceive was before them. So they certainly seemed to know it was coming. And I think the case law they cite afterwards. And they even went out to the outside California case to say going into contract with someone else is not a license to cheat. It's not a license for fraud. And that case is very compelling. And that's part of the logic here, that because two parties enter a contract, neither party now has the right to cheat or lie or fraudulently induce the other. Now, I'm not saying negligence. I'm saying an intentional act of misrepresentation, concealment. It has to be intentional. And that's a point we made repeatedly that I think is fairly clear to be read into their decision. But I recognize the difficult faces that you would, I think, say we don't want to decide it or we can't decide it. I don't know if that's really an answer to the issue that's going to repeat. It's come up and it's going to come up a lot more. Manufacturers have perceived the federal courts as friendlier for these cases. And we're going to see economic loss rule brought up every time there's a claim outside of the warranty context. So it is going to be a persistent issue. And then it's a weird position to have to guess what the Supreme Court of California is going to have to do. But I think it's one that this case has placed you in. Now, obviously, I have a biased opinion on that. But I think when you look at the case law cited, I can't see it seems like an artificial distinction here. You have some people manufacturing, let's just call it the old Ford Pinto, you know, giving us another extreme case. If you know the cars are going to blow up, that's probably something you should tell people and not be marketing it in the first place. And we don't want to create a situation where they have immunity from basically putting on the market anything, despite what knowledge they have of the car's defectiveness. And this comes up a lot on the Ford 6.0 cases. All right, counsel. You're well over your time. I apologize. I think you've adequately answered Chief Judge Thomas's question. Thank you very much. Ye versus BMW of North America is submitted. We've previously submitted Jaramillo v. Barr.
judges: Thomas, Wardlaw, Nguyen